IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES WEBB, JR. | * | |
| | * | |
| v. | * | Civil No. CCB-18-2125 |
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Now pending is *pro se* petitioner James Webb, Jr.'s motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g). (ECF 1).[1] The government opposes the motion, (ECF 10), and Webb has replied, (ECF 12-1).[2] For the reasons explained below, the court treats Webb's motion as one filed pursuant to 18 U.S.C. § 983(e), and will reserve judgment on the motion pending supplemental briefing from the government.

**BACKGROUND**

On November 19, 2015, Webb was indicted for one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 18 U.S.C. § 846. (*United States v. James Webb, Jr., et al.*, Crim. No. CCB-15-606 (D. Md. 2015), ECF 12). In an affidavit attached to the criminal complaint, Task Force Officer Kevin Ermer of the Drug Enforcement Agency ("DEA") stated that between September and November 2015, Webb had been the primary target of a drug investigation, and that on November 8, 2015, agents executed a search warrant for Webb's residence. (Ermer Aff. ¶¶ 7, 10, No. CCB-15-606 at ECF 2). The agents recovered a large quantity of cash, drug distribution

---

[1] Unless otherwise noted, references to CM/ECF refer to docket entries in Civil Case No. CCB-18-2125.
[2] Webb directly mailed a "Motion in Opposition to Government's Response to Petitioner's Complaint" to the government but did not file this document with the court. (ECF 12). The government, however, interpreted this document as Webb's reply and provided a copy of it to the court. (ECF 12-1). The court will also interpret this document as Webb's reply.

1

paraphernalia, and a key to another apartment and storage unit, from which the agents recovered more than 5000 grams of cocaine and more than 1000 grams of heroin. (*Id*. ¶ 10). According to an inventory list signed by Rolanda Webb[3] on November 8, 2015, the agents also seized, *inter alia*, three watches and miscellaneous paperwork from Webb's residence. (ECF 10-1 at 5). The seized cash was later found to total $22,034.00.[4] (*Id*. at 8).

According to DEA Forfeiture Counsel Vicki L. Rashid, after the search of Webb's residence, agents prepared and submitted forfeiture reports for the seized cash and "assorted jewelry," (i.e., the watches) and the DEA began administrative forfeiture proceedings against the property. (Rashid Decl. ¶¶ 4(a), 5(a), ECF 10-2). On December 28, 2015, the DEA sent, by certified mail, written notice of the seizures to Webb's residence (the same address from which the property was seized). (ECF 10-2 at 8 (notice of the cash seizure); ECF 10-2 at 19–20 (notice of the seizure of the watches)). Rolanda Webb signed for both of these notices. (*Id*. at 9, 21). The DEA also sent notices to Webb at the Chesapeake Detention Facility ("CDF"), which appear to have been received and signed for by someone other than Webb. (*Id*. at 10–11, 22–24). The mailed notices stated that the deadline to file a claim contesting forfeiture was February 1, 2016. (*Id*. at 8, 19–20). The DEA also posted notice of the seizures to www.forfeiture.gov, an official government forfeiture website, for a period of thirty consecutive days beginning on January 11, 2016, and ending on February 9, 2016. (Rashid Decl. ¶¶ 4(f), 5(f); ECF 10-2 at 16, 31). The internet postings stated that the deadline to file a claim contesting forfeiture was March 11, 2016. (ECF 10-2 at 17, 32). Rashid explained that the later deadline was in case the mailed notices were not received. (Rashid Decl. ¶¶ 4(f), 5(f)). The DEA did not receive any properly executed claims as to the

---

[3] In his Reply, Webb clarifies that Rolanda Webb is his wife. (ECF 12-1 at 5–6).
[4] Webb originally claimed that the seized cash totaled $32,000, (ECF 1 at 2), but "after review[ing] the evidence presented by the Government," he "conced[ed] that the $22,034.00 as counted by the Government money-counting machines is probably correct." (ECF 12-1 at 2).

seized property by the later deadline. (*See id*., ¶¶ 4(g), 5(g)). Accordingly, the DEA forfeited the cash on March 21, 2016, and the watches on on March 22, 2016. (*Id*.; ECF 10-2 at 18 (declaration of forfeiture as to the cash); ECF 10-2 at 33 (declaration of forfeiture as to the watches)).

On June 28, 2016, Webb pled guilty to the charged conduct, (No. CCB-15-606 at ECF 64), and on October 12, 2016, he was sentenced to 120 months' imprisonment followed by a five-year term of supervised release. (*Id*. at ECF 82). Several months later, in July 2017, Webb wrote a letter to the court requesting "a copy of my Plea Agreement and any and all documents related to the forfeiture of any property." (*Id*. at ECF 110). In a letter to Webb dated August 9, 2017, the court noted that the docket sheet and Plea Agreement were sent to the warden of Webb's institution. (*Id*. at ECF 111). In November 2017, Webb again contacted the court, requesting an updated copy of the docket and "proof of [his] property confiscated in relation to this case, should have been approximately around November 2015." (*Id*. at ECF 118). According to the docket, the court did not respond.

On July 11, 2018, Webb filed the instant motion seeking the return of the seized cash, watches, and miscellaneous paperwork. (ECF 1). The government opposes the motion with respect to the cash and the watches, but notes that the miscellaneous paperwork remains in DEA custody and is available to be returned to Webb. (ECF 10 at 6).

**ANALYSIS**

Under 18 U.S.C. § 983(e), a person whose property is forfeited pursuant to a nonjudicial civil forfeiture proceeding may file a motion to set aside the forfeiture declaration where "(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim." 18 U.S.C. § 983(e)(1). Although Webb styled his motion as one pursuant to Federal Rule of Criminal

Procedure 41(g), a motion under § 983(e) is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." *See* 18 U.S.C. § 983(e)(5). Webb's property was administratively forfeited by the DEA pursuant to 21 U.S.C. § 881, (*see* ECF 10-2 at 18, 33), a statute which provides for the civil forfeiture of seized contraband. The court will thus treat Webb's motion as one under § 983(e). *See Bostic v. United States*, No. CIV. WDQ-13-2731, 2015 WL 4389329, at *3 (D. Md. July 14, 2015) (treating the defendant's 41(g) motion as one under 18 U.S.C. § 983(e) and noting that "when 'the criminal case has closed, and the seized property has long since been declared forfeited to the government,' Rule 41(g) is unavailing," (quoting *United States v. Minor*, 228 F.3d 352, 356 (4th Cir. 2000)).[5]

Webb argues that he is entitled to the return of his property because "notice of forfeiture was never sent to or received by the Defendant in this case." (ECF 1 at 1–2). The government counters that Webb cannot obtain relief under § 983(e) because the government took "reasonable steps" to notify Webb of the forfeitures. (ECF 10 at 7); *see* § 983(e)(1)(A). While the Fourth Circuit has not directly addressed the issue of what "reasonable steps" are required under §983(e), courts in this district look to *Minor*—in which the Fourth Circuit analyzed the notice requirement for an administrative forfeiture under 21 U.S.C. § 881, *see* 228 F.3d at 354, 358–59—for guidance.[6] Accordingly, when an "interested party" to a forfeiture is in federal custody, taking "reasonable steps" means the government must

> (i) send a certified letter, return receipt requested, to the facility where the prisoner is housed, (ii) show that a prison official signed for the letter, and (iii) provide evidence that mail delivery procedures existed at that facility that were reasonably calculated to ensure that the notice, once addressed to the inmate, would still reach him upon arrival at the prison (and indeed, would only be accepted were the inmate actually present).

---

[5] Unpublished opinions are cited for the soundness of their reasoning rather than any precedential value.
[6] Congress enacted § 983(e) after the Fourth Circuit decided *Minor*. *See Bostic*, 2015 WL 4389329, at *3.

*Burman v. United States*, 472 F. Supp. 2d 665, 667 (D. Md. 2007) (citing *Minor*, 228 F.3d at 358) (further citation, quotation marks, and brackets omitted); *see also Bostic,* 2015 WL 4389329, at *4–5 (same notice procedure applies to pretrial detainees in federal custody). With respect to the second requirement for relief under § 983(e), "the government [] also carr[ies] the burden of proving that the claimant otherwise knew or should have known of the forfeiture." *Id*.

Here, the government has established that it sent certified letters regarding the forfeitures to CDF, where Webb was held at the time,[7] and that someone signed for the letters. But the government does not establish that the person who signed for the letters was, in fact, a CDF official,[8] nor does the government provide any evidence regarding the adequacy of CDF's mail delivery procedures. Moreover, the government does not specifically argue that Webb should have known about the forfeitures based on the notices mailed to his wife or posted on the internet; the government simply argues that those steps taken by the government "satisfied due process." (ECF 10 at 8). Indeed, Webb asserts in his Reply that his wife did not inform him of any forfeiture notices sent to his residence[9] and notes that he has had no access to the internet while in prison. Accordingly, the government has not carried its burden of showing either that it took reasonable steps to inform Webb of the forfeiture proceedings, *see* § 983(e)(1)(A), or that he knew or should have otherwise known about the forfeitures in time to file a claim, *see* § 983(e)(1)(B).

In *Burman*, the court faced a similar situation where the record was incomplete as to whether the government took "reasonable steps" to inform a person in federal custody of forfeiture

---

[7] While the government does not provide evidence that Webb was at CDF in December 2015, Webb does not dispute that he was. (ECF 12-1 at 6).

[8] The signature block on the delivery slips required a signature and a printed name. While someone appears to have signed for the notices sent to CDF, there is no printed name, (ECF 10-2 at 11, 24), and the government does not provide the identity of this signatory. (*See* Rashid Decl. ¶¶ 4(c), 5(c) (simply stating that "an individual" accepted delivery)).

[9] In a document attached to Webb's Reply, Rolanda Webb stated "under penalty of perjury" that she "do[es] not recall receiving any notices regarding forfeiture." (ECF 12-1 at 15).

proceedings against his property. *See* 472 F. Supp. 2d at 667–68. Rather than immediately grant the defendant's motion, the *Burman* court gave the government the opportunity to either (1) "attempt to complete the record by presenting evidence on the 'reasonable steps' prong," or (2) "if limitations have not run, re-initiate forfeiture proceedings." *Id*. at 668. Here, the court believes that allowing the government to either complete the record or re-initiate forfeiture proceedings is a prudent course of action. *Cf. Bostic*, 2015 WL 4389329, at *6 (reserving judgment on 41(g) motion pending supplemental briefing by the government explaining why the defendant's property should not be returned). The court will thus reserve judgment on Webb's motion pending supplemental briefing by the government.[10]

## CONCLUSION

For the foregoing reasons, the court will reserve judgment on Webb's motion pending supplemental briefing from the government, which should either complete the record as to the "reasonable steps" prong of § 983(e) or indicate that the government has re-initiated forfeiture proceedings. In light of the current COVID-19 health crisis, the government will be allowed 60 days to provide such briefing. A separate order follows.

  4/21/20  
Date

/S/  
Catherine C. Blake  
United States District Judge

---

[10] It is not necessary to address the parties' arguments regarding whether the court has jurisdiction to review the "merits" of the forfeitures. The court agrees that, by its terms, § 983(e) limits a district court's review of an administrative forfeiture to the government's notification procedure. But Webb's challenge *is* to the government's notification procedure; he argues that he was not properly notified of the forfeiture, and that his property should thus be returned. Accordingly, the court need not reach the "merits" of the forfeitures in order to resolve Webb's motion.